# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **BETTY JEAN BLOCK** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-04-2326** |
| | § | |
| **KELLY SERVICES, INC., and,** | § | |
| **EXXON MOBIL CORPORATION** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & ORDER

Pending before the Court is Defendant Kelley Services, Inc.'s Motion for Summary Judgment (Dkt. #20). The Court, having considered the motion, Plaintiff's response, and the applicable law, is of the opinion that the motion for summary judgment should be GRANTED.

### Factual and Procedural Background

Plaintiff, Kelley Jean Block, began working for Defendant, Kelley Services, Inc., a temporary staffing agency, in January 1997 and was assigned to ExxonMobil's Baytown refinery. Her last assignment, which lasted from approximately March 2001 to July 28, 2003, was in the refinery's Chemical Plant garage office where she was an Administrative Assistant to ExxonMobil employee, Charles McClosky, Manager of the Training/Maintenance Department. During this period, a company named Tecom, an onsite maintenance contractor, also supplied approximately ten of its employees to work in the Chemical Plant garage. It is undisputed that Plaintiff, who did not work directly for either Tecom or ExxonMobil at any point, had no authority over the Tecom employees, but rather, Plaintiff's position largely involved clerical and administrative tasks, and also the observation of Tecom employees. In particular, with regard to the Tecom employees, Plaintiff was to report back to McClosky any problems that she saw or that were brought to her attention.

Several times during Plaintiff's employment in the Chemical Plant garage, Tecom employees told her that they had been subject to inappropriate conduct. Specifically, three Tecom employees, Jason Howe, Bernardo Ramos, and Dean Taylor, each told Plaintiff that another Tecom employee, Anthony Taft, was engaging in harassing conduct. In each instance, Plaintiff sent a note to McClosky to inform him of the complaints, but did not inform Defendant. Additionally, on two separate occasions Taft had complained to Plaintiff about the actions of two other Tecom employees, who had allegedly made inappropriate comments and/or engaged in inappropriate conduct. Plaintiff also relayed these reports to McClosky and was subsequently questioned as a witness regarding these allegations. It is apparently undisputed that no adverse employment action was taken against Plaintiff as a result of reporting any of these concerns to McClosky, and, in fact, Plaintiff states that McClosky encouraged her to bring such concerns to him.

On April 14, 2003, Keri Joseph, another Tecom employee, complained to Plaintiff that Taft had asked her to go to lunch with him, made a gesture with his hips, "said something to the effect that he wanted to 'get it on,'" and had been hostile toward her since she rebuffed his advances.[1] Plaintiff apparently concluded that the allegations were credible and that the conduct constituted sexual harassment. Plaintiff relayed the information to McClosky without specifically identifying Joseph by name, at which point McClosky responded by telling Plaintiff that there was nothing he could do until the employee came forward herself. The next morning, McClosky told Plaintiff to make sure that Joseph, as yet unidentified to McClosky, knew that she could come to him regarding the issue.

After Plaintiff had initially reported the situation to McClosky, Plaintiff decided to send an

---

[1]Dkt. #21, Ex. 1, pp. 73-74.

e-mail to Donna Clement, Tecom's Human Resources representative, on behalf of Joseph.  Clement responded that Plaintiff should encourage the employee to contact her directly.  Thereafter, Plaintiff sent Clement a second e-mail in which she identified Joseph and Taft as the individuals involved.  Clement responded that she would handle the complaint from that point forward, which Plaintiff understood to mean that Clement "took it out [Plaintiff's] hands."[2]  McClosky also reported back to Plaintiff that he had reviewed ExxonMobil's harassment policy, reported the situation to his supervisor, and sought the assistance of another ExxonMobil employee with regard to the complaint.  At this point, McClosky also instructed Plaintiff "not to have further contact with Tecom employees on that subject . . . ."  After this instruction, Plaintiff had two additional conversations with Joseph.

During one of these conversations, Joseph told Plaintiff that no one from Tecom had contacted her about the complaint.  Plaintiff reported this to McClosky, who subsequently told Plaintiff that someone from Tecom had assured him that the company had conducted an investigation, could not substantiate Joseph's claims, and concluded the matter.  On June 12, 2003, McClosky forwarded an e-mail to Plaintiff from Roberto Ayerdis, another Tecom employee.  In the e-mail, Ayerdis complained about Plaintiff's apparent dislike and antagonism toward Taft.  McClosky indicated that Ayerdis had filed a complaint against Plaintiff with ExxonMobil contract administration, and when Plaintiff laughed in response, McClosky told her that it was a "serious" matter.  McClosky further explained that Taft claimed Plaintiff was spreading rumors about him and had told a security  guard about Joseph's harassment complaint.  McClosky then told Plaintiff not to make eye contact with Taft during safety meetings, not to show any emotion toward him, to distance herself from Tecom employees, to limit her discussions with them to business matters, and

---

[2] *Id.* at p. 84

3

not to discuss the Joseph situation with anyone.

The next day, Plaintiff contacted Defendant for the first time regarding the matter. Specifically, Plaintiff sent an e-mail to Julian Lopez, Defendant's then Area Manager, and Connie Schofield, Defendant's on-site representative at the refinery, in which she reported the Joseph sexual harassment complaint and the Taft complaint against her. Plaintiff also alleged that she believed that Taft had attempted to bump her in the hallway. After receiving the e-mail, Schofield called Plaintiff to set up a meeting between herself, Plaintiff, and Lopez. At the meeting, Plaintiff further described the Joseph complaint and also that she had contacted Clement directly. Lopez told Plaintiff that she should have contacted Defendant sooner and that it was not appropriate to contact another contractor's human resources representative. After confirming that Plaintiff would feel comfortable returning to her work assignment, Lopez told Plaintiff that she was not to have any further discussions about the alleged harassment with anyone, especially Tecom employees, and not to contact anyone in Tecom human resources again.

After this meeting, Joseph came into Plaintiff's office and told Plaintiff that she was looking for an attorney, which Plaintiff assumed was related to Joseph's sexual harassment claim against Taft. In response, Plaintiff looked up the name of an attorney in the phone book, wrote it down, and passed the information to Joseph later that day. Afterwards, Clement allegedly called Sharon Cochran, who at the time was Defendant's account manager with responsibility for ExxonMobil, to tell Cochran that Plaintiff continued to involve herself in Tecom's sexual harassment investigation and, in particular, that Plaintiff had approached another employee with the name of an attorney to represent Joseph. Cochran then requested that Schofield confirm whether Plaintiff had continued to discuss the Joseph complaint. After McClosky confirmed to Schofield that Plaintiff was, in fact,

discussing the situation with Tecom employees, Schofield met with Plaintiff again.  During this meeting, Schofield asked Plaintiff if she had given Joseph the name of an attorney, and Plaintiff admitted that she had.  Schofield then removed Plaintiff from the ExxonMobil assignment for unprofessional conduct.

On June 18, 2004, Plaintiff commenced this lawsuit against both Defendant and ExxonMobil. In her complaint, Plaintiff alleges that Defendant and ExxonMobil retaliated against her for assisting an employee in reporting sexual harassment in violation of Title VII of the Civil Rights Act of 1964.  Defendant filed its motion for summary judgment on June 30, 2005, to which Plaintiff responded on August 12, 2005.  Thereafter, Plaintiff's claims against ExxonMobil were dismissed with prejudice by agreement on September 29, 2005.[3]

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v.*

---

[3] Dkt. #38.

*Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### Discussion

Defendant argues that there is no evidence that its decision to remove Plaintiff from her position was motived by retaliatory animus. Rather, Defendant contends that it removed Plaintiff because of a legitimate, non-discriminatory reason. In particular, Defendant contends that it removed Plaintiff from her position because Plaintiff continued to unnecessarily and inappropriately involve herself in another contractor company's handling of a harassment complaint after officials from ExxonMobil and Defendant specifically instructed her not to do so. In response, Plaintiff first attacks Defendant's legitimate, non-discriminatory reason as pretextual, and further maintains that her claim survives under the "mixed-motive" model because there is direct evidence that

Defendant's decision to remove Plaintiff resulted from her opposition to unlawful employment activities.  The Court addresses these issues below.

In order to prove a retaliation claim under Title VII, a plaintiff must establish that (1) the employee has engaged in protected activity, (2) the employer took adverse employment action against the employee, and (3) a causal connection exists between that protected activity and the adverse employment action." *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999).  Under this Court's view of current Fifth Circuit precedent, once a plaintiff sets forth this prima facie case,

> [T]he defendant then must articulate a legitimate, non-discriminatory reason for its decision . . . ; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence . . . either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004) (internal quotation marks and citations omitted).[4]

For purposes of its motion, Defendant concedes that Plaintiff can establish her prima facie case of retaliation.  Therefore, the Court begins its inquiry with whether Defendant has met its

---

[4]Although the Fifth Circuit's decision in *Rachid* involved an age discrimination claim under ADEA, several courts have since concluded that this "modified McDonnell Douglas approach" articulated in *Rachid* also applies to retaliation claims under Title VII.  *See, e.g.*, *Warren v. Terex Corp.*, 328 F. Supp. 2d 641, 646 (N.D. Miss. 2004) (applying mixed-motive analysis to retaliation claim); *Bergen v. Continental Cas. Co.*, 3:04-CV-0428-H, 2005 WL 292426, at *4 (N.D. Tex. Feb. 7, 2005) (same); *Cones v. Duke Energy Corp.*, 367 F. Supp. 2d 1092, 1100 (S.D. Tex. 2005) (same).  This Court concurs with the view expressed by these courts.  Thus, despite Plaintiff's argument that direct evidence supports application of the mixed-motive analysis, in fact, the presence of direct evidence is not necessary to apply the mixed-motive standard.

burden of producing a legitimate, non-discriminatory reason for its decision.  In order to satisfy its burden, Defendant explains that it removed Plaintiff from her ExxonMobil assignment because she failed to follow instructions given to her regarding communications with Tecom employees. Specifically, Defendant points to Plaintiff's admission that even after McClosky told Plaintiff to limit her communications with Tecom employees to business only and not to discuss the Joseph claim or investigation, Plaintiff continued to participate in additional conversations with Joseph. Moreover, Defendant notes that Plaintiff looked up and provided Joseph the name and telephone number of an attorney despite the fact that Lopez and Schofield had reiterated that Plaintiff was not to discuss the harassment claim.

In response, Plaintiff disputes that Defendant's "failure to follow orders" justification can serve as its legitimate, non-discriminatory reason.  If Defendant's argument were to prevail, according to Plaintiff, employers could avoid the retaliation provisions of Title VII by simply ordering their employees not to oppose or complain about any Title VII violations.  The Court disagrees.  First, any attempt by an employer to discipline an employee for violating such an order would clearly violate Title VII.  Second, in the case at bar, the Court does not construe Defendant's or ExxonMobil's directives to Plaintiff as orders not to oppose or complain about the alleged harassment.  Instead, it appears undisputed that Plaintiff reported the Joseph complaint, as well as other complaints, without incident.  Indeed, Plaintiff appears to suggest that such reports were encouraged.  The adverse employment action came only after Plaintiff continued her involvement in the situation after repeatedly being instructed not to do so because it was being handled by the third-party contractor.  Because it is clear that a failure to follow orders can serve a legitimate, non-discriminatory reason, the Court concludes that Defendant has satisfied its burden.  *See, e.g.*, *Aldrup*

*v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001) ("The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action.").

The burden now shifts to Plaintiff to offer sufficient evidence either (1) that Defendant's reason is not true, but is instead a pretext for discrimination, or (2) that Defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's protected activity. Plaintiff has not met either standard. Although Plaintiff states that "the evidence clearly demonstrates" pretext, Plaintiff does not directly identify any evidence that she relies upon for this conclusion. Instead, Plaintiff seems to rely solely on the undisputed facts and circumstances surrounding her removal, which Plaintiff contends demonstrate that she suffered an adverse employment action as a result of her actions opposing the alleged Title VII violation. Plaintiff, however, construes too broadly the scope of protection provided under Title VII for opposition activity.

Under Title VII, an employee has engaged in protected activity if he or she has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Plaintiff, of course, claims protection under the opposition prong. Assuming that all of Plaintiff's actions constitute opposition activity,[5] the Court notes that "[n]ot all activities taken in opposition to an employer's perceived discriminatory practices . . . remain insulated from reprisal under Title VII's shield." *Douglas v.*

---

[5] The Court notes that it is not completely convinced that all of Plaintiff's actions qualify as opposition activity, particularly her continued involvement in the Joseph situation after the appropriate information had already been conveyed to the appropriate officials, and Plaintiff had been instructed not to further involve herself.

9

*DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 (5th Cir. 1998).  Indeed, the Fifth Circuit has "recognized that some conduct, even though engaged in with the most sincere of intentions, may be so inappropriate as to justify the curtailment of statutorily-afforded safeguards." *Id.* (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 727 (5th Cir. 1986).  As such, the court advised that "the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare."  *Id.* at 374-75 (citations and internal quotations omitted).

In this case,  it is clear that Plaintiff's actions in initially reporting the alleged harassment of Joseph to McClosky represents opposition activity entitled to Title VII protection.  Additionally, Plaintiff had relayed other concerns on behalf of different Tecom employees to McClosky on several occasions.  There is no evidence, however, to support any claim that Defendant retaliated against Plaintiff for these actions.  In fact, it appears undisputed that Defendant was not aware of Plaintiff's reporting of the Joseph incident until sometime later because she did not inform Defendant of the situation until a complaint had been made against her by Taft.  Even after Defendant was made aware of Plaintiff's involvement with Joseph, there is nothing that suggests that it retaliated or intended to retaliate against Plaintiff, despite Defendant's clear expressions to Plaintiff that she should not have contacted another contractor's human resources department.   Yet despite Defendant's instructions not to continue discussions with Tecom employees regarding the Joseph matter,[6] as well as two similar warnings by McClosky, Plaintiff proceeded to provide the name and

---

[6] Although Plaintiff suggests that passing information to Joseph would not constitute "discussion," the Court finds Plaintiff's argument unpersuasive.  It is clear to the Court that Plaintiff understood from ExxonMobil and Defendant's instructions that she was not to interact further with Tecom employees regarding the Joseph situation.

number of an attorney to Joseph.  In light of these clear instructions, Plaintiff's awareness that the information had already been conveyed to the appropriate officials and that an investigation had commenced, and Defendant's position as a contractor seeking to avoid interference with other third-party contractors, the only conclusion that can be drawn is that Plaintiff's conduct after the initial reporting was unreasonable.  Therefore, Plaintiff's removal was justified.  As such, summary judgment is appropriate.

## Conclusion

For the reasons set forth above, the Court is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED.

It is so ORDERED.

Signed this 14th day of October, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE